**Naomi L. SIMS, Plaintiff,**

v.

**UNIVERSITY OF CINCINNATI,
Defendant.**

No. Civ. C–1–96–846.

United States District Court,
S.D. Ohio,
Western Division.

Feb. 24, 1999.

Mark Joseph Byrne, Jacobs, Kleinman, Seibel & McNally, Cincinnati, OH, for Plaintiff.

David H. Peck, Taft Stettinius & Hollister, Cincinnati, OH, for Defendant.

## ORDER

HERMAN J. WEBER, District Judge.

This matter is before the court upon defendant's Motion for Summary Judgment (doc. 23), plaintiff's opposing memorandum (doc. 40), and defendant's reply memorandum (doc. 42) and upon defendant's Motion to Dismiss (doc. 39), and plaintiff's Motion for Additional Time to Respond (doc. 43), which defendant opposes (doc. 44).

### Motion for Additional Time

Plaintiff has attached to the motion for additional time a memorandum in opposition to defendant's motion to dismiss. The court hereby grants the motion for additional time and accepts plaintiff's memorandum for filing since doing so will not delay the resolution of this lawsuit and unfairly prejudice defendant.

### Motion to Dismiss

The sole remaining claim in this lawsuit is plaintiff's claim that defendant terminated her employment in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2617(a)(2)(A). Defendant moves to dismiss the claim pursuant to Fed.R.Civ.P. 12(h)(3) for lack of subject matter jurisdiction (doc. 39). Defendant contends that it is immune from suit under the Eleventh Amendment to the United States Constitution.

The question of subject matter jurisdiction may be raised at any time since a court which lacks subject matter jurisdiction does not have power to hear the case. *U.S. v. Adesida,* 129 F.3d 846, 850 (6th Cir.1997), *cert. denied,* — U.S. ——, 118 S.Ct. 1688, 140 L.Ed.2d 824 (1998). If subject matter jurisdiction is challenged, the party asserting subject matter jurisdiction has the burden of proving it exists. *Dalton v. Jefferson Smurfit Corporation,* 979 F.Supp. 1187, 1193 (S.D.Ohio 1997) (Dlott, J.) (*citing Rogers v. Stratton Indus., Inc.,* 798 F.2d 913, 917 (6th Cir.1986)). Where the defendant raises a facial attack on subject matter jurisdiction in that defendant merely questions the sufficiency of the pleading, the court liberally construes the allegations in the complaint as true. *Id.; Thomson v. Ohio State Univ. Hosp.,* 5 F.Supp.2d 574, 576 (S.D.Ohio 1998) (Graham, J.). The present motion involves a facial attack on the complaint and the court will therefore accept the allegations of the complaint as true for purposes of the motion to dismiss. *See Thomson,* 5 F.Supp.2d at 576.

The Eleventh Amendment states that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." The Eleventh Amendment "prevents a federal court from entertaining a suit brought by a citizen against his own state." *Thomson,* 5 F.Supp.2d at 576 (*citing Hans v. LA.,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)); *MacDonald v. The Village of Northport,* 164 F.3d 964, 969–70 (6th Cir. 1997). The protection of the Eleventh Amendment extends to "instrumentalities of the state where they are arm[s] or alter ego[s] of the state." *Id.* at 576 (*quoting Regents of Univ. of Calif. v. Doe,* 519 U.S. 425, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997) and *Hall v. Medical College of Ohio,* 742 F.2d 299, 301 (6th Cir.1984)). The type of relief sought is irrelevant to the issue of whether a suit against the state or a state agency is barred by the Eleventh Amendment. *Seminole Tribe of Fla. v. Fla.,* 517 U.S. 44, 58, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (*citing Cory v. White,* 457 U.S. 85, 90, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982)) ("It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the State itself simply because no money judgment is sought"); *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). "[A] state

**738**

agency may not be sued in federal court, regardless of the relief sought, unless the state has waived its sovereign immunity or Congress has overriden it." *Whittington v. Milby,* 928 F.2d 188, 193 (6th Cir.1991) (*citing Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978)). Accordingly, a state or its agencies may not be sued unless the state has waived its sovereign immunity or Congress has overriden the State's sovereign immunity by abrogation. *Id.* at 576 (*citing Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)).

The University of Cincinnati is an arm of the State of Ohio. *Dillion v. University Hospital,* 715 F.Supp. 1384, 1386 (S.D.Ohio 1989) (Rubin, C.J.); *Thomson v. Harmony,* 65 F.3d 1314, 1319 (6th Cir.1995). The State of Ohio has not clearly waived its sovereign immunity from suit for claims brought under the FMLA. *Thomson,* 5 F.Supp.2d at 577. Rather, the State has only generally consented to being sued in the Ohio Court of Claims pursuant to Ohio Revised Code § 2743.02. *Id.* Accordingly, defendant may only be sued under the FMLA in federal court if Congress has abrogated the State's immunity.

██ Several federal courts which have considered the issue of whether Congress has abrogated the states' immunity from suit under the FMLA have held that Congress did not do so. *Thomson,* 5 F.Supp.2d 574; *McGregor v. Goord,* 18 F.Supp.2d 204 (N.D.N.Y.1998); *Garrett v. Bd. of Trustees of the Univ. of Alabama,* 989 F.Supp. 1409 (N.D.Ala.1998); *Driesse v. Fla. Bd. of Regents,* 26 F.Supp.2d 1328 (M.D.Fla.1998); *Post v. State of Kansas,* 1998 WL 928677 (D.Kan.1998); *but see Jolliffe v. Mitchell,* 986 F.Supp. 339 (W.D.Va.1997); *Biddlecome v. Univ. of Texas,* 1997 WL 124220 (S.D.Tex.1997); *Knussman v. Maryland,* 935 F.Supp. 659 (D.Md.1996). For the reasons stated below, the court finds the reasoning of those cases which have found no abrogation of states' immunity to be persuasive and

holds that defendant is immune from liability as to plaintiff's FMLA claim.

In determining whether Congress has abrogated states' sovereign immunity, the court must determine "(1) whether Congress has unequivocally expressed its intent to abrogate immunity; and (2) whether Congress has acted pursuant to a valid exercise of power, that is, whether the law was passed pursuant to a constitutional provision which grants Congress the power to abrogate immunity." *Thomson,* 5 F.Supp.2d at 577 (*citing Seminole Tribe of Fla. v. Fla.,* 517 U.S. 44, 54–58, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). The court in *Thomson* concluded that the first prong of the inquiry is satisfied with respect to the FMLA since (1) Congress included state and local governments as proper employer-defendants under the Act by defining the term "employer" to include any "public agency", which in turn includes "the Government ... of a State or political subdivision thereof; any agency of ... a State, or a political subdivision of the State", and (2) the FMLA provides that an action to recover damages or equitable relief may be maintained against an employer in federal or state court. *Id.* at 577; 29 U.S.C. § 2617(a)(2).

However, the *Thomson* court determined that the second prong of the inquiry is not satisfied for the FMLA. The court reasoned that the only currently recognized authority for Congress to abrogate the states' sovereign immunity is § 5 of the Fourteenth Amendment to the United States Constitution ("Congress shall have power to enforce, by appropriate legislation, the provisions of this article"). *Id.* (*citing Seminole,* 116 S.Ct. at 1125). A three-part test applies to determine whether Congress has properly enacted legislation pursuant to its power under § 5: "(1) whether the statute may be regarded as an enactment to enforce the Equal Protection Clause; (2) whether it is plainly adapted to that end; and (3) whether it is not prohibited by, but is consistent with, the letter and the spirit of the constitution." *Id.*

*(citing Katzenbach v. Morgan,* 384 U.S. 641, 651, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966); *Wilson–Jones v. Caviness,* 99 F.3d 203, 209 (6th Cir.1996)).

The court in *Thomson* found that the first part of the test is satisfied insofar as the FMLA may be regarded, on its face, as an attempt to enforce the Equal Protection Clause. *Id.* at 578. Title 29 U.S.C. § 2601(b), which outlines the purposes of the FMLA, states that leave under the FMLA is to be provided "(4) ... in a manner that, consistent with the Equal Protection Clause of the Fourteenth Amendment, minimizes the potential for employment discrimination on the basis of sex by ensuring generally that leave is available for eligible medical reasons (including maternity-related disability) and for compelling family reasons, on a gender-neutral basis" and "(5) to promote the goal of equal employment opportunity for women and men, pursuant to such clause."

In considering the second part of the test, the *Thomson* court identified the purposes of the FMLA as promoting family cohesion and attempting to prevent discrimination on the basis of gender against women, who are more likely than men to request time off work to perform family care-giving functions imposed on them by society. *Id.* at 579. The court determined that the FMLA did not satisfy the requirement that the statute be plainly adapted to its end since there was not "congruence and proportionality between the injury to be prevented and the means adopted to that end." *Id. (citing City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 2164, 138 L.Ed.2d 624 (1997)). The court reasoned as follows:

> The creation by statute of an affirmative entitlement to leave distinguishes the FMLA from other statutory provisions designed to combat discrimination. In effect, Congress, inasfar as it purports to rely on the Fourteenth Amendment as the basis of the FMLA, is attempting to dictate that the Equal Protection Clause of the Fourteenth Amendment

requires that employees be furnished twelve weeks of leave per year for the reasons set forth in the act. This is patently the sort of substantive legislation that exceeds the proper scope of Congress' authority under § 5. As earlier noted, there must be a "congruence and proportionality" between the injury to be prevented and the means adopted to that end. *City of Boerne,* 117 S.Ct. at 2164. The means employed in the FMLA are not congruous or proportional to the goal of achieving equal treatment, regardless of gender, in the workplace. Of course, the Equal Protection Clause demands this of state employers. However, the FMLA does not merely make it illegal for employers to treat requests for leave differently on the basis of gender, but instead mandates that employers provide employees with a new and valuable benefit.

\*     \*     \*     \*     \*     \*

> "Congress does not enforce a constitutional right by changing what the right is. It has been given the power 'to enforce,' not the power to determine what constitutes a constitutional violation." *City of Boerne,* 117 S.Ct. at 2164. This is what Congress has done in enacting the FMLA and therefore the Court concludes that the second factor of the *Katzenbach* test, that is, the requirement that there is a "congruence and proportionality between the injury to be prevented and the means adopted to that end" *City of Boerne,* 117 S.Ct. at 2176, has not been met.

*Id.* at 580.

The *Thomson* court found that because legislation endowing employees nationwide with a general entitlement to leave cannot properly be considered enforcement of the Fourteenth Amendment within the meaning of § 5, Congress did not have the power to abrogate states' immunity to suits under the FMLA and its attempt to do so is ineffective. *Id.*

The *Thomson* court expressed additional concerns as to the third part of the test, which is whether the legislation is consistent with the spirit of the Constitution and its negative constraints. The court found that as applied to the states, the FMLA would impose a significant financial burden and would inappropriately impede upon a traditional area of state sovereignty by requiring state employers to provide a valuable benefit to employees that is "entirely foreign to the employment agreement reached between the individual and the state." *Id.* at 580–81.

Finally, the *Thomson* court rejected *Knussman, Biddlecome,* and *Jolliffe* to the extent their holdings are inconsistent with its holding. The court found that none of these cases apply the analysis required by the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit. *Id.* at 581. Rather, *Knussman* did not address whether the FMLA was enacted pursuant to a valid exercise of constitutional power which authorizes Congress to abrogate the states' immunity; *Biddlecome* did not apply the *Katzenbach* test but looked only to the language used by Congress in the Act; and *Jolliffe* was limited to a cursory look at the language of the FMLA and made no reference to either *City of Boerne* or the *Katzenbach* test. *Id.* at 581.

This court has examined the decisions which have addressed the issue of whether Congress effectively abrogated states' immunity from suit under the FMLA. The court finds the reasoning in *Thomson* and like decisions to be sound and more persuasive than the reasoning underlying the contrary decisions in *Knussman, Biddlecome,* and *Jolliffe.* Accordingly, this court hereby adopts the reasoning in *Thomson* and concludes that Congress did not effectively abrogate the states' immunity from suit under the FMLA. It follows that the Eleventh Amendment bars this court from entertaining plaintiff's FMLA suit against defendant.

It is therefore **ORDERED** that plaintiff's Motion for Additional Time is **GRANTED** and plaintiff's attached memorandum in opposition to the Motion to Dismiss is accepted for filing. Defendant's Motion to Dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(h)(3) is **GRANTED.** This case is hereby **DISMISSED** for lack of subject matter jurisdiction and is **TERMINATED** on the docket of this court.

**IT IS SO ORDERED.**